IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|                       |   |                      |
|-----------------------|---|----------------------|
| FRANCOIS JOHNSON,     ) |   |                      |
|                       ) |   |                      |
| Plaintiff,            ) |   |                      |
|                       ) |   | No. 12-2748-JTF-dkv   |
| vs.                   ) |   |                      |
|                       ) |   |                      |
| CARGILL, INC. et al., ) |   |                      |
|                       ) |   |                      |
| Defendants.           ) |   |                      |
|                       ) |   |                      |

REPORT AND RECOMMENDATION TO DENY JOHNSON'S REQUEST TO AMEND
COMPLAINT

On August 30, 2012, the plaintiff, Francois Johnson ("Johnson"), filed a *pro se* complaint, alleging "Discriminatory Practice, Harassment, Retaliation, and an hostile working environment, [and] unfair drug screening practice" pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; 42 U.S.C. § 1981; the Tennessee Human Rights Act; the Fifth, Eighth and Fourteenth Amendments of the United States Constitution; and 28 U.S.C. § 1331." (Compl. 1, ECF No. 1.) Accompanying the complaint was a motion seeking leave to proceed *in forma pauperis*. (ECF No. 2) On September 14, 2012, the court issued an order granting Johnson leave to proceed *in forma pauperis*. (ECF No. 3.) Pursuant to 28 U.S.C. § 1915(e)(2), the court

screened the complaint and dismissed all but Johnson's retaliation claim on March 19, 2014. (Order, ECF No. 8.)

Now before the court is Johnson's April 10, 2014 "Request to Amend Civil Complaint Pursuant Rule 15(c) of Civil Procedures." (Pl.'s Req. to Amend, ECF No. 10.) Because the amended complaint states new facts and causes of action, the court again screens Johnson's proposed amended complaint pursuant to 28 U.S.C. § 1915(e)(2). For the foregoing reasons, it is recommended that to the extent Johnson's proposed amended complaint states new causes of action, his request to amend his complaint be denied for failure to state a claim upon which relief can be granted and he be allowed to proceed on only those claims set forth in his original complaint.

## I. PROPOSED FINDINGS OF FACT

The allegations in Johnson's complaint stem from his lengthy employment, beginning in 1995, with the defendant, Cargill, Inc. ("Cargill"). The court hereby incorporates its findings of fact contained in its Report and Recommendation on the original complaint for *sua sponte* dismissal, (Report & Recommendation, ECF No. 6), which the district court adopted in its order adopting in part and rejecting in part this court's Report and Recommendation, (Order, ECF No. 8). The following additional allegations are set forth in Johnson's proposed amended complaint:

Beginning on March 19, 2011, Johnson allegedly engaged in whistleblower activity by reporting his plant manager, Sean Kratzer ("Kratzer"), and the production supervisor, Tricie Seawright ("Seawright"), for violations of the company's zero-tolerance policy of "running the plant with the B dust system not functioning at all," in which case Kratzer and Seawright "were to call an [sic] get a critical bypass to remain open for business." (Pl.'s Req. to Amend 1, ECF No. 10.) He alleges that there had been "no result of the investigation" of the March 19, 2011 incident when Johnson inquired on October 13, 2011 about the incident and about "what action was taken against the 2 members of management". (*Id.* at 3.) On October 18, 2011, Johnson requested another investigation into the retaliation claim of a union member, Marcus Louis ("Louis"), against Kratzer and Garry Follis. (*Id.*) On November 17, 2011, the dust system was again down for two months under the management of Kratzer, and Johnson again "brought that to upper management, Barry Brandstetter and the union Rep. James Sproles." (*Id.*)

Johnson also asserts additional claims relating to allegations he previously made in his original complaint. In the original complaint, Johnson alleged that on or about June 3, 2011, Kratzer sent Johnson "a notice to report back to work within five days of receiving a return-to-work notice." (Compl.

3

1, ECF No. 1.) Upon returning to work, Johnson was required to take a drug test and was sent home from work until Cargill received the results of the test. (*Id.*) Johnson now adds that sending workers home pending the results of a drug test had never been a practice of Cargill, and the "'collective bargaining contract' does not have that provision in it as it relates to call-back to work, nor in plaintiff [sic] 16 years of being a union steward" had he been sent home after a call-back. (Pl.'s Req. to Amend 2, ECF No. 10.) Due to Cargill's sending him home, he did not work fifteen hours and "lost out on close to 1,000 dollars." (*Id.*) When he returned to work, Johnson discovered he would not be paid for the four days he was sent home, and he asked why he was not told that this was the company policy. (*Id.* at 4.) He was given a Drug and Alcohol Policy, which "mentioned nothing about a drug screening for permanent employees returning from a layoff." (*Id.*) He then discovered that other employees were being given different types of drug tests, which "was addressed by the union Teamsters local 667, and presented to the Labor Board." (*Id.*) "[A]s of this date there are still no payment of lost monies." (*Id.*) Johnson alleges that "it was no coincidence that the employees affected were the majority of the employees mentioned in Plaintiff previous case 10-2084." (*Id.* at 4-5.) Johnson explains that he did not previously include these additional allegations

4

surrounding the drug test in his original complaint because the "EEOC representative would not let plaintiff include it, stating it was out of their jurisdiction." (*Id.* at 2.)

II. PROPOSED CONCLUSIONS OF LAW

A. <u>28 U.S.C. § 1915(e)(2) Screening</u>

Pursuant to Local Rule 4.1(a), the court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action —

    (i)     is frivolous or malicious;

    (ii)    fails to state a claim on which relief may be granted; or

    (iii)   seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2). This report and recommendation will constitute the court's screening of the additional claims set forth in Johnson's request to amend his complaint.

B. <u>Standard of Review for Failure to State a Claim</u>

In assessing whether Johnson's proposed amended complaint states a claim on which relief may be granted, the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the]

5

complaint to determine if they plausibly suggest an entitlement to relief.'"  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)(quoting *Iqbal*, 556 U.S. at 681)(alteration in original). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed."  *Williams*, 631 F.3d at 383 (internal quotation marks omitted).  *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading")(internal quotation marks omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant

to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

A. <u>Johnson's New Retaliation Claims Set Forth in His Amended Complaint</u>

Johnson's request to amend his complaint contains new allegations that he was retaliated against for the following reporting activities: (1) beginning on March 19, 2011, Johnson reported Kratzer and Seawright for "running the plant with the B dust system not functioning at all," (Pl.'s Req. to Amend 1, ECF No. 10); (2) on October 18, 2011, Johnson requested an investigation into the retaliation claim of a union member, Louis, against Kratzer and Garry Follis, (*Id.* at 3); and on November 17, 2011, Johnson alerted upper management that the the

7

dust system was again down for two months under the supervision of Kratzer, (*Id.*). The alleged retaliatory acts, which are also contained in Johnson's original complaint, occurred between July of 2011 and October of 2011.[1] Johnson received his right-to-sue letter on May 30, 2012. (Right-to-Sue Letter, ECF No. 1-1; Compl. 1, ECF No. 1.)

Johnson is barred from litigating his new retaliation claims by the Title VII statute of limitations. Once Johnson received his right-to-sue letter from the EEOC on May 30, 2012, he had ninety days in which to file suit in district court. *See* 42 U.S.C. § 2000e-5(f)(1). Thus, the time for filing expired on August 28, 2012. Johnson cannot now assert new retaliation claims which fall outside the limitations period, and "[t]he filing of a prior complaint does not toll the ninety-day period." *Tate v. United Servs. Assocs., Inc.*, 75 F. App'x 470, 471 (6th Cir. 2003). Accordingly, the court recommends denying Johnson's request to amend his complaint to add additional retaliation claims.

B. <u>Johnson's Additional Claims Stemming from Cargill's Drug Test Policies</u>

---

[1] Both Johnson's original complaint and his proposed amended complaint allege the following retaliatory acts committed by Cargill: (1) Johnson received a bad evaluation from Cargill in July of 2011, (2) Johnson was denied the opportunity to "cross train" between the period of August 22, 2011 and September 8, 2011, and (3) that he was constantly harassed by Kratzer and Seawright from July until October of 2011. (Compl., ECF No. 1; Pl.'s Req. to Amend Compl., ECF No. 10.)

8

In Johnson's request to amend his complaint, he alleges new claims arising from the drug testing that occurred on June 3, 2011. (*See* Pl.'s Req. to Amend Compl. 1, ECF No. 10.) These allegations — which refer to Cargill's drug testing policy regarding sending employees home pending the results of their drug tests, the "collective bargaining contract's" drug testing policy, and the wages that Johnson allegedly lost due to being sent home for fifteen hours — were not presented in his original complaint or in his EEOC charge of discrimination. (*See* Compl., ECF No. 1; EEOC Charge, ECF No. 1-1.)

In enacting Title VII, Congress gave the initial responsibility of enforcement to the EEOC. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). Accordingly, when an employee has a complaint arising out of alleged employment discrimination, Title VII directs the employee to first file an administrative charge with the EEOC within a certain time of the alleged unlawful act. *See* 42 U.S.C. § 2000e-5(e)(1). "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." *Younis*, 610 F.3d at 361. To the extent Johnson brings this proposed new claim as a violation of Title VII, Johnson did not exhaust his administrative remedies by alleging the facts he now asserts in his request to amend his complaint

regarding Cargill's drug testing policy and his loss of wages. Thus, to the extent that Johnson's additional allegations state new causes of action under Title VII beyond his surviving retaliation claim, they are barred for failure to exhaust administrative remedies.

## III. RECOMMENDATION

Because Johnson's request to amend his complaint does not contain any new claims that survive dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the court recommends that his request be denied.

Respectfully submitted this 9th day of July, 2014.

<u>s/Diane K. Vescovo</u>
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. F<small>ED</small>. R. C<small>IV</small>. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.